942 F.2d 790
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CARPENTERS SOUTHERN CALIFORNIA ADMINISTRATIVE CORPORATION,
Plaintiffs-Appellants,
v.
Ben E. MILLER, individually and doing business as Caswell
Cement Contractors, Ben E. Miller, individually and doing
business as Miller Concrete Const., Joel Caswell
individually and doing business as Caswell Construction,
Inc., a California corporation, Defendants-Appellees.
 No. 89-56066.
United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 9, 1990.
Decided Aug. 21, 1991.
 
 1
 Before D.W NELSON and REINHARDT, Circuit Judges, and PRICE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs appeal from a judgment in favor of the defendants. We reverse.
 
 FACTUAL BACKGROUND
 
 4
 On July 12, 1974, defendant, Ben E. Miller, became a party to a memorandum agreement which had previously been entered into by the United Brotherhood of Carpenters and Joiners, AFL-CIO, and eleven Southern California counties' construction industry contractors. Among other things, Miller, as owner of Caswell Cement Contractors, agreed to pay current contributions to the Carpenters Health and Welfare Trust for Southern California, the Carpenters Pension Trust for Southern California, and the 11 County Carpenters Vacation Savings and Holiday Plan. Plaintiff sues in its capacity as administrator of these plans.
 
 
 5
 Miller stated that he did business as Caswell Cement Contractors under contractor license no. 243314. After signing this contract, Miller complied with the contributions requirements by having his bookkeeper prepare the necessary reports and the checks. However, Miller signed the checks.
 
 
 6
 At some point in the early 1970's, Miller left the business and moved to Northern California. Mr. Erbar, an employee, continued the business under the same name and contract number.
 
 
 7
 In 1974 or 1975, Miller asked Helen Thomas to write a letter notifying the union that Miller was out of business and "no longer needed their services." At the time of trial Mrs. Thomas was deceased. The letter was not in the union files, and Miller did not keep a copy.
 
 
 8
 In 1983, Miller returned to the Southern California area. He obtained a union contract, and contacted Mr. Erbar to do the job. It should be noted that the claim of Tom Erbar and his son spawned the audit which resulted in this suit.
 
 
 9
 On cross-examination, Miller was confronted with contribution forms that were submitted in April and May of 1976, signed by his bookkeeper Helen Thomas, who was authorized to act in Miller's behalf. In addition, exhibits in evidence by the plaintiffs indicated that Caswell Cement filed monthly reports with the trustee starting in April 1981, and continuing through December 1985, even for months when no carpenters were employed. Furthermore, the audit conducted by the union indicated that union employees were employed at other times, but no reports were made concerning these employees.
 
 
 10
 The exhibits also indicate that Caswell Cement filed intermittent reports with the trustee from sometime in 1970 through June 1978. The June 1978 form contains a handwritten statement across its face which states: "No longer in business. Please close our account. Thank you." However, the memorandum agreement contained the following language:
 
 
 11
 6. This Memorandum Agreement shall be binding upon the heirs, executors, administrators, purchasers and assigns of the Contractor and shall be binding upon the contract regardless of a change of entity, name or association or joint venture and shall bind any entity or venture who is a principal, financially associated with the contractor.
 
 
 12
 7. This agreement shall become effective June 16, 1974, and shall remain in full force and effect until June 16, 1975, and from year to year thereafter unless either party has given to the other party written notice of sixty days or more prior to June 16, 1975, or any subsequent year that such notice is given to terminate, modify or amend.
 
 
 13
 While the district court made no findings on this issue, it is clear that the June 1978 handwritten notice did not comply with the foregoing terms as to termination, about the company no longer being in business nor was the union given notice, as required by the contract.
 
 
 14
 The facts in this case are similar to those in Local 302, Intern. U. of Operating Eng. v. West, 882 F.2d 399, 401 (9th Cir.1989). There, too, the employer argued that even if it had not complied with the formal termination requirements, its conduct served to repudiate the agreement. We held that "conduct that constitutes repudiation must be unambiguous", id. at 402, and concluded that the employer's actions did not meet that standard. There, as here, there was intermittent activity by the employer over a period of years, the employer contended that it had disavowed the agreement and there had been a substantial change in the employer's structure. In West, we determined that the employer's arguments were "undercut by [its] inconsistent practice. See also, NLRB v. Jeffries Lithograph Co., No. 752 F.2d 459, 463. The same is true here.
 
 
 15
 The judgment of the district court is REVERSED, and the case is remanded to the district court for entry of judgment as prayed for by the appellant.
 
 
 
 *
 The Honorable Edward Dean Price, Senior District Judge, Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3